IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| AUSTIN EDWARD LIGHTFEATHER, | |
| Plaintiff, | **8:23CV214** |
| vs. | |
| BRANDON HOLISTER, LMHIP; UNKNOWN WHITE FEMALE OFFICER FOR NDCS, FOSTER, Inmate of Tecumsehs Super Max Prison; NEBRASKA DEPARTMENT OF CORRECTIONAL SERVICES, STEPHANIE BAREN, Counsel Ombudsman, Inspector General of Nebraska; BLUE, Case Manager; VICTOR OSUNA, RICARDO MANDOZA, LEWIS VASQUEZ, KRUGLE, Captain, of RTC; CORPRAL ANDREWS, MATTHEW PAVEY, CODY MILLER, Corpral; MARTIN, Dietary Kitchen; D.J., Inmate of Tecumsehs Super Max Prison; LANK GRIFFIN, and BLUE, | **MEMORANDUM AND ORDER** |
| Defendants. | |

This matter is before the Court on Plaintiff Austin Edward Lightfeather's ("Lightfeather") Motion for Leave to Proceed in Forma Pauperis ("IFP"). Filing No. 5. On June 9, 2023, the Court required Lightfeather to show cause why he is entitled to proceed IFP in this action. Filing No. 6. The Prison Litigation Reform Act ("PLRA") prevents a prisoner with "three strikes" from proceeding IFP unless the prisoner is under imminent danger of serious physical injury. 28 U.S.C. § 1915(g). The Court has previously determined that three or more federal court cases brought by Plaintiff, while a prisoner, were dismissed as frivolous or for failure to state a claim upon which relief may be granted. *See, e.g.*, *Lightfeather v. McSwine*, No. 8:22-cv-00238-JFB-PRSE (D. Neb.) (Filing No. 11, finding Plaintiff has "three strikes" and dismissing complaint

pursuant to 28 U.S.C. §1915(g)). After being granted an extension of time, *see* Filing No. 10, Lightfeather filed a second motion to proceed IFP on August 25, 2023, which the Court treats as a response to the show cause order (hereinafter "First Response"). Filing No. 11. Subsequently on November 17, 2023, Lightfeather simultaneously filed two additional responses to the show cause order (hereinafter, respectively, "Second Response" and "Third Response"). Filing No. 12; Filing No. 13.

For the reasons that follow, the Court finds that Lightfeather's Motion for Leave to Proceed IFP, Filing No. 5, shall be granted under 28 U.S.C. § 1915(g)'s imminent danger exception. Upon initial review to determine whether summary dismissal is appropriate under 28 U.S.C. §§ 1915(e) and 1915A, the Court finds Lightfeather's Complaint, Filing No. 1, and supplements, Filing No. 8; Filing No. 9,[1] fail to state a claim upon which relief can be granted.

## I. SUMMARY OF COMPLAINT AND RESPONSES

Lightfeather is a convicted and sentenced prisoner in the custody of the Nebraska Department of Correctional Services ("NDCS"). When he filed his Complaint on May 24, 2023, Lightfeather was confined in the Tecumseh State Correctional Institution ("TSCI"), *see* Filing No. 1 at 32, but he was subsequently transferred to the Reception and Treatment Center ("RTC") on June 20, 2023, Filing No. 9 at 2, where he is currently confined. Plaintiff sues eighteen defendants in total (collectively "Defendants"),[2] including the NDCS; Counsel Ombudsman Stephanie Baren; the

---

[1] As set forth in the Court's July 18, 2023, Memorandum and Order, Filing No. 10, the Court considers page 1 of Filing No. 8 and pages 5 and 6 of Filing No. 9 as supplemental to the Complaint.

[2] Lightfeather also identified Judge Kevin McManaman as a potential defendant in the body of his Complaint only "if the judge would choose . . . to add him as a defendant" for Judge McManaman's "roll [sic] in sentencing [Lightfeather] to N.D.C.S. custody." Filing No. 1 at 23. Lightfeather indicates he did not list Judge McManaman as a defendant due to "the 11th Amendment regarding immunity the courts would

2

Inspector General of Nebraska[3]; RTC staff members Case Manager Blue ("C.M. Blue"), Captain Krugle, Corporal Andrews, Corporal Cody Miller, and "Dietary Kitchen Martin" (hereinafter "Martin"); and TSCI staff members Brandon Holister, LMHIP, and an "unknown white female officer." Filing No. 1 at 2. Lightfeather also names the following NDCS inmates as defendants: Victor Osuna, Ricardo Mandoza, Lewis Vasquez,[4] Matthew Pavey, Foster, D.J. a/k/a Dan Jones ("D.J."), "Lank" Griffin (hereinafter "Griffin"), and "Blue" a/k/a Jay Bone (hereinafter "Jay Bone").[5] Id.; Filing No. 9 at 5–6; see also Filing No. 10 at 2 (granting Lightfeather's requests to correct defendant "B.J." to "D.J." and add Griffin and Jay Bone as defendants). In essence, Lightfeather seeks release from NDCS custody, damages, and injunctive relief in the form of specific dietary accommodations for violations of his Eighth Amendment rights due to various threats to his safety. Filing No. 1 at 27–28.

Much of Lightfeather's Complaint asserts claims related to his confinement in the RTC between November 2022 and April 2023. Lightfeather alleges that beginning in November 2022, when he was in NDCS custody for a pre-sentence evaluation, his food trays were poisoned or otherwise contaminated. Filing No. 1 at 3, 6, 16, 18–19. An inmate named Carl Russcamp reported to Lightfeather that "an Officer Murphy and a

---

sight [sic] on the behalf of McManaman." Id. As Lightfeather's complaints against Judge McManaman relate solely to his acts in sentencing Lightfeather, Judge McManaman is entitled to immunity from Lightfeather's claims, and the Court, thus, declines to consider Judge McManaman as a defendant in this case. See Schottel v. Young, 687 F.3d 370, 373 (8th Cir. 2012) (a judge is immune from suit, including suits brought under § 1983 to recover for alleged deprivation of civil rights, for acts performed within the judge's judicial capacity and jurisdiction).

[3] Upon docketing, the Court listed "Inspector General of Nebraska" as a description or title associated with Counsel Ombudsman Baren, but upon closer review, the Court concludes Lightfeather intended the Inspector General as a separate defendant. See Filing No. 1 at 31.

[4] Lightfeather also refers to this Defendant as "Valez Lewis Valquez" and "Lewis Valquez." Filing No. 1 at 5. The Court will refer to this Defendant as "Vasquez."

[5] Unless otherwise specifically noted, the Court will refer to each individual Defendant by their last name.

Sgt. Officer both poisoned [Lightfeather's] food tray." *Id*. at 3.  The poisoning caused Lightfeather "conflictions" in his brain and, he claims, "contributed to cause poor health making me believe that I am Jewish which I don't think I am.  But the conflicts make me believe that I am . . . . and I am unsure of my identity in who I am." *Id*. at 6.  Lightfeather further alleges Miller delivered food trays to him between February and April 13, 2023, in which he "was fed hair, poison, blue beans, snot, and spit," *Id*. at 16 (spelling corrected), and he received a kosher tray while at the TSCI with "a large amount of spit in it," *Id*. at 19.

Lightfeather alleges Osuna, Mandoza, and Vasquez poisoned him in January 2023 while he was eating with them in the cell Lightfeather shared with these three inmates.  "They cooked rice, beans, and fish and poisoned my food specifically by putting small amounts of liquid chemicals in my batch I was given." *Id*. at 10 (spelling corrected).  Lightfeather alleges he "started to have bloody noses and . . . became ill with cold sweats," he had 12 to 15 bloody noses in the 4 months after he was poisoned, and he went to medical three times for the condition but was sent back to the cell with Osuna, Mandoza, and Vasquez who were aggressive with Lightfeather "to move out after [he] was poisoned." *Id*.

While Lightfeather was ill from the January poisoning, he alleges Andrews did not place him in the skilled nursing facility ("SNF") due to his bleeding condition nor did she check on him for 10 hours when he laid in bed not moving. *Id*. at 13.  Andrews also allegedly allowed inmates to steal Lightfeather's laundry bundle so he had to wear the same dirty clothes for three weeks.  Though unclear, Lightfeather seems to allege that, while he was ill from being poisoned, Andrews allowed a situation on his housing unit to

4

escalate, and Lightfeather was placed in protective custody after being threatened to be jumped by twelve inmates outside his cell.  *Id*. at 10, 13.

Lightfeather reported the January 2023 poisoning by Osuna, Mandoza, and Vasquez to Krugle, a member of the NDCS Intelligence Department, and Krugle spoke to the three inmates.  *Id*. at 12.  Krugle promised to keep Lightfeather safe and, while Lightfeather was transferred to the Nebraska State Penitentiary ("NSP") for a short time, would look into getting Lightfeather transferred to the Omaha Correctional Center ("OCC").  *Id*.  No such transfer occurred, and Lightfeather was transferred back to the RTC and then to the TSCI.  Lightfeather also alleges he reported the January 2023 poisoning and the earlier November 2022 poisoning by Officer Murphy to C.M. Blue who failed to take appropriate action and report the officer involved in this poisoning incident as he should have.  *Id*. at 9.

After being poisoned in January 2023, Lightfeather was moved to a different cell in the RTC and placed with inmate Pavey.  Pavey and Lightfeather had the same attorney for their state criminal matters, and Pavey talked about his case "too much" which made Lightfeather nervous.  *Id*. at 14.  Lightfeather alleges Pavey placed a $5,000 financial hit on Lightfeather's life because Pavey believed Lightfeather "told on him."  *Id*.  Lightfeather alleges "a central monitoring is in place" to keep Lightfeather and Pavey separate, but Lightfeather believes that Pavey is friends with an administrator which enables him to promote Lightfeather's death and an officer or caseworker could violate the central monitoring.  *Id*. at 14–15.

Liberally construed, Lightfeather alleges Defendant Miller acted pursuant to Pavey's hit on Lightfeather while Lightfeather was on RTC's H-unit on March 15, 2023

(hereinafter "March 2023 shank incident").   *Id*. at 17;  Filing No. 9 at 3–4.   Lightfeather was moved from the suicide watch gallery into "cell #4" of the "F.G. Gallery of H-Unit when a Corporal Cody Miller could be seen on video by cell #2 and #3 giving cell #2 a shank through the hatch on camera."  Filing No. 1 at 17 (punctuation omitted; spelling corrected).  Lightfeather alleges, "Case Worker Lewis was working the Floor Gallery and could be seen on the phone, I believe to have the unit cameras shut off for enough time to kill me."  *Id*.  In response, Lightfeather started to yell and scream to be moved, but the officers denied him the move.  Other inmates kept surrounding Lightfeather's door to talk to him, and Lightfeather "then smeared fecal matter and within two minutes . . . was moved back to suicide watch" where he was stripped of his clothing and given a smock to wear.  *Id*.

Lightfeather alleges he reported the March 2023 shank incident, Pavey's hit on Lightfeather, and the earlier poisonings to Counsel Ombudsman Baren, but that she ultimately did nothing for him and stopped returning Lightfeather's phone calls after March 2023.  *Id*. at 7–8; *see also* Filing No. 9 at 4.

Lightfeather was transferred to the TSCI in approximately April 2023, and Defendant Holister placed Lightfeather on an Involuntary Medication Order ("IMO") under which Lightfeather is administered Abilify for psychosis, though Lightfeather maintains he only has Autism Spectrum Disorder.[6]  Filing No. 1 at 20–21.  Lightfeather alleges he was placed on a unit where he was "threatened by unstable prisoners of Upper B Gallery, who target [him] and lie to LMHIP Brandon Holister about [Lightfeather] and [his] condition," which led Holister to deny Lightfeather canteen items.  *Id*. at 20

---

[6] While in his Complaint Lightfeather denies that he suffers from psychosis, Filing No. 1 at 21, he indicates in his First Response that he "needs" his monthly injections of Abilify, Filing No. 11 at 3.

(spelling corrected). Specifically, Lightfeather alleges inmates Foster and D.J. convinced Holister to not give Lightfeather a porter job, threatened to harm Lightfeather, and kicked and punched at Lightfeather's cell door stating, "Once we get this open you're a dead man walking." *Id*. at 22. Lightfeather alleges Foster and D.J. first began to prey on him by asking Lightfeather if he wanted hygiene supplies and giving Lightfeather items he did not want and did not attempt to understand Lightfeather's autism disorder. *Id*. Lightfeather also claims the "unknown white female officer" at TSCI was "rooting against [him], joining in on the narcotic behavior of these prisoners," and told Holister, "I hope Austin Lightfeather kills himself." *Id*. at 21. The "unknown white female officer" also stole food items from Lightfeather and his legal mail to read with other prisoners, and Lightfeather "saw her place something in the food cart before serving, such as a chemical item." *Id*.

While at the TSCI, Lightfeather alleges inmate Griffin accused Lightfeather of being racist and calling Griffin "the N-word," which Lightfeather denies. Filing No. 9 at 6. Shortly thereafter, Lightfeather was transferred back to the RTC and placed on the same unit as inmate Jay Bone. Jay Bone and Griffin know each other, and Lightfeather alleges the two are "working with officers to help have me murdered with 'conspiracy.'" *Id*. at 5. Lightfeather alleges that Griffin was going to be transferred in July 2023 to the same unit at the RTC as Lightfeather "which [would] place[] both defendants [Griffin and Jay Bone] on the same unit as me." *Id*. at 6. In his Second Response, Lightfeather alleges he learned in September 2023 that Jay Bone and Griffin "have written letters to outside sources, and those who have contact with officers of NDCS, to have an officer open [Lightfeather's] cell door to have [him] stabbed." Filing No. 12 at 3.

7

Lightfeather further alleges that, after being transferred back to the RTC, Defendants Osuna, Mandoza, and Vasquez "placed a hit" on Lightfeather for telling on them.  Filing No. 9 at 3.  Lightfeather generally alleges that "money is being sent by officers and inmates alike to promise my death.  I am a target because I am an 'award winning author' of the book 'Autism The Fight Inside.' . . . I have been 'labeled' as a 'snitch' because of my book content."  Id. at 7.

In his First Response to the Court's show cause order, Lightfeather essentially argues he has demonstrated imminent danger through what he has alleged in his Complaint.  He also states that Griffin and Pavey have both been placed on his "classification central monitoring no contact list" after two separate interviews with NDCS Intelligence in July and August 2023.  Filing No. 11 at 1.  Lightfeather further indicates he met with two NDCS Intelligence investigators about Defendants Pavey and Miller.  Id. at 5.

In his Second and Third Responses, Lightfeather argues he has demonstrated he is in danger for three reasons.  First, Corporal Hoffman, who is not a named defendant, quit her position at the NDCS after she was tied to the conspiracy involving Defendants Pavey and Miller and the murder attempt on Lightfeather's life on or about March 14, 2023,[7] on FG Gallery of H-4 Unit in the RTC, where Miller allegedly gave a shank to an inmate in a cell near Lightfeather's.  Filing No. 12 at 1; see also Filing No. 1 at 17.  Lightfeather contends that Hoffman quitting "shows direct cause for IFP" in this case against all Defendants including Andrews, Osuna, Mandoza, and Vasquez after the attempt to poison Lightfeather in January 2023, because Hoffman defended the

---

[7] In his Complaint, Lightfeather provided March 15, 2023, as the date this event occurred.  Filing No. 1 at 17.

inmates involved along with Andrews, Krugle, and C.M. Blue.  Filing No. 12 at 1–2.

Second, Lightfeather alleges that Mandoza confessed to poisoning him in January

2023.  And third, Pavey carried out a hit, similar to the one he ordered on Lightfeather,

where Pavey paid $500 to have a person named Michael a/k/a "Sly" stabbed, and Sly

was stabbed in August 2023.  Lightfeather asserts these circumstances show he faces

a continuing danger from these inmates and the threats on his life.

## II.  MOTION TO PROCEED IFP

### A.  Applicable Legal Standards

As stated in the PLRA, a prisoner cannot

bring a civil action . . . or proceeding [IFP] if the prisoner has, on 3 or more
prior occasions, while incarcerated or detained in any facility, brought an
action . . . in a court of the United States that was dismissed on the
grounds that it is frivolous, malicious, or fails to state a claim upon which
relief may be granted, unless the prisoner is under imminent danger of
serious physical injury.

28 U.S.C. § 1915(g).

Because Lightfeather has "three strikes," he may only proceed IFP in this action if

he is "under imminent danger of serious physical injury."  28 U.S.C. § 1915(g); *see also*

*Higgins v. Carpenter*, 258 F.3d 797, 800 (8th Cir. 2001).   "[T]he requisite imminent

danger of serious physical injury must exist at the time the complaint or the appeal is

filed . . . . [and] the exception focuses on the risk that the conduct complained of

threatens continuing or future injury, not on whether the inmate deserves a remedy for

past misconduct."  *Martin v. Shelton*, 319 F.3d 1048, 1050 (8th Cir. 2003) (citation

omitted).  "When an inmate is granted leave to proceed in forma pauperis under the

imminent danger exception, the in forma pauperis 'action must be limited to imminent

danger claims that have been properly exhausted.'" *Charron v. Whitlock*, No. 2:18-CV-

00032-PLC, 2018 WL 3546763, at *1 (E.D. Mo. July 24, 2018) (quoting *McAlphin v. Toney*, 375 F.3d 753, 755 (8th Cir. 2004)).

Applying these principles, the Eighth Circuit has concluded that the imminent-danger-of-serious-physical-injury standard was satisfied when an inmate alleged that prison officials continued to place him near his inmate enemies, despite two prior stabbings, *Ashley v. Dilworth*, 147 F.3d 715, 717 (8th Cir. 1998), and when an inmate alleged deliberate indifference to his serious medical needs that resulted in five tooth extractions and a spreading mouth infection requiring two additional extractions, *McAlphin v. Toney*, 281 F.3d 709, 710–11 (8th Cir. 2002).   However, the Eighth Circuit has held that a general assertion that defendants were trying to kill the plaintiff by forcing him to work in extreme weather conditions despite his blood pressure condition, was insufficient to invoke the exception to § 1915(g) absent specific fact allegations of ongoing serious physical injury, or of a pattern of misconduct evidencing the likelihood of imminent serious physical injury.   *Martin*, 319 F.3d at 1050.

**B. Analysis**

As an initial matter, Lightfeather's allegations regarding the past instances of being poisoned or receiving contaminated or poisoned food trays do not qualify as a threat of imminent danger under the plain language of § 1915(g).   *Ashley*, 147 F.3d at 717 ("Allegations that the prisoner has faced imminent danger in the past are insufficient to trigger this exception to § 1915(g) and authorize the prisoner to pay the filing fee on the installment plan.").   Lightfeather's Complaint does not allege any facts indicating he is currently suffering physical injury or facing future physical injury from the allegedly contaminated food trays.   Indeed, Lightfeather does not allege that he received any

contaminated or poisoned trays after April 13, 2023, Filing No. 1 at 16, and the January 2023 poisoning by Osuna, Mandoza, and Vasquez suggests only an isolated incident. Therefore, Lightfeather cannot satisfy the imminent danger of serious physical injury standard as he makes no claim of continuing physical harm from contaminated or poisoned food trays.  *See Lightfeather v. Dietary of the Lancaster Cnty. Jail*, No. 8:22CV224, 2022 WL 3718109 (D. Neb. Aug. 29, 2022) (no imminent danger where Lightfeather alleged no facts suggesting alleged contamination of food likely to continue or would result in future physical injury); *Ball v. Allen*, No. CIV.A. 06-0496-CG-M, 2007 WL 484547 (S.D. Ala. Feb. 8, 2007) (allegations that prisoner "receives inadequate, unsanitary, and contaminated food and beverages," among other things, insufficient to show imminent danger).

The Court further concludes that Lightfeather's general, unsupported, and conclusory allegations about inmates Foster, D.J., Griffin, Jay Bone, Osuna, Mandoza, and Vasquez threatening to harm Lightfeather, or "working with officers to help have [him] murdered with 'conspiracy,'" Filing No. 9 at 5, or placing a hit on him, *Id*. at 3, are insufficient to demonstrate Lightfeather is facing a specific and genuine threat of serious physical injury.  "The dangers to which [Lightfeather] has alluded are nothing other than the normal and expectable perils of life in prison," and "[h]e cannot be excused from the three-strikes rule based on [such] vague, conclusory and speculative concerns . . . ." *Jacobs v. Sletten*, No. CV 11-548 (ADM/AJB), 2011 WL 13202226, at *2 (D. Minn. Apr. 7, 2011), *report and recommendation adopted*, No. CV 11-548 ADM/AJB, 2011 WL 13202227 (D. Minn. May 10, 2011), *aff'd*, 433 F. App'x 486 (8th Cir. 2011) (citing *Martin*, 319 F.3d at 1050 ("conclusory assertions that defendants were trying to kill" a prisoner

were "insufficient to invoke the exception to § 1915(g) absent <u>specific fact allegations</u> of ongoing serious physical injury, or of a pattern of misconduct evidencing the likelihood of imminent serious physical injury") (emphasis added)).[8]

However, giving Lightfeather's pleadings their most liberal construction, the Court concludes that he has alleged sufficient facts to show that he is under imminent danger of serious physical injury in order to proceed IFP under the exception to the three-strikes rule in 28 U.S.C. § 1915(g) based on his allegations regarding the "hit" on his life ordered by Pavey.   Lightfeather alleges Pavey placed a $5000 financial hit on Lightfeather's life after they were cellmates; Lightfeather observed Defendant Miller give an inmate located near Lightfeather a shank in order to carry out the hit; Lightfeather spoke to NDCS Intelligence investigators about Pavey and Miller; a central monitoring no contact order was placed on Lightfeather and Pavey; another NDCS officer quit due to her connection to this alleged conspiracy between Pavey and Miller; and Pavey successfully ordered a hit on another inmate who was stabbed in August 2023.  Taking these allegations as true, the Court finds Lightfeather has alleged sufficient, specific factual allegations that he faced an imminent danger of serious injury at the time he filed his Complaint.

---

[8] *See also Jacobs*, 2011 WL 13202226, at *2 n.3 (citing *Merriweather v. Reynolds*, 586 F.Supp.2d 548, 552 (D.S.C. 2008) (prisoner's averment that he had enemies in prison, that there had been threats against his life, and that prison gangs were intending to harm him, was "unsupported, vague, self-serving, conclusory speculation" that did not establish an imminent danger of serious physical injury for purposes of § 1915(g)); *Ticker v. Dawkins*, No. 3:08CV49-1-MU (W.D.N.C. 2008), 2008 WL 510199 at *2 (prisoner's "broad, completely unsupported" allegation that prison official had solicited other inmates to murder him was insufficient to establish imminent danger); *Meyers v. U.S. Dist. Court for the Middle Dist. of Pennsylvania*, No. 1:11-CV-173, (M.D. Pa. 2011), 2011 WL 766937 at *3 ("a vague allegation" of "threats and violence" that "are 'still continuing' " is insufficient; because prisoner did not "provide specific factual allegations as to how he is in imminent danger at the present time, he cannot avoid application of the Three Strikes Rule")).

Accordingly, the Court concludes Lightfeather may proceed IFP in this action pursuant to the imminent danger exception to the three strikes rule in 28 U.S.C. § 1915(g).   However, because he is a prisoner, Lightfeather must still pay the Court's $350.00 filing fee by making monthly payments to the Court as mandated by the PLRA. 28 U.S.C. § 1915(b).

Pursuant to 28 U.S.C. § 1915(b)(1), a prisoner plaintiff must pay an initial partial filing fee in the amount of 20 percent of the greater of the plaintiff's average monthly account balance or average monthly deposits for the six months preceding the filing of the complaint.   However, as set forth in 28 U.S.C. § 1915(b)(4), "[i]n no event shall a prisoner be prohibited from bringing a civil action . . . for the reason that the prisoner has no assets and no means by which to pay the initial partial filing fee."   When the prisoner is unable to pay the initial partial filing fee due to a lack of funds, the requirement that the initial partial filing fee will be paid at the outset of the case is suspended.   *See Jackson v. N.P. Dodge Realty Co.*, 173 F. Supp. 2d 951, 957 n. 9 (D. Neb. 2001).   Instead, "the whole of the . . . filing fees are to be collected and paid by the installment method contained in § 1915(b)(2)."   *Henderson v. Norris*, 129 F.3d 481, 484 (8th Cir. 1997).

Here, Lightfeather is permitted to proceed IFP under the imminent danger exception to the three strikes rule, and a past certified copy of Plaintiff's inmate account statement, as well as his filings in the present case, indicate he has a zero balance. *See Lightfeather v. Hartman, et al.*, Case No. 8:22-CV-359-JFB-PRSE (D. Neb), Filing No. 9; *see also* Filing No. 11 at 5 (indicating Lightfeather's "0.00 insufficient funds" to purchase commissary items in Aug. 2023).   As such, this matter will proceed to initial

review without payment of the initial partial filing fee, and instead the filing fee will be collected and remitted, as funds exist, in the manner set forth in 28 U.S.C. § 1915(b)(2).

## III.  INITIAL REVIEW OF COMPLAINT

### A.  Applicable Standards on Initial Review

The Court is required to review prisoner and in forma pauperis complaints to determine whether summary dismissal is appropriate.  *See* 28 U.S.C. §§ 1915(e) and 1915A.  The Court must dismiss a complaint or any portion of it that states a frivolous or malicious claim, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915(e)(2)(B); 28 U.S.C. § 1915A(b).

Pro se plaintiffs must set forth enough factual allegations to "nudge[] their claims across the line from conceivable to plausible," or "their complaint must be dismissed." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569–70 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

"The essential function of a complaint under the Federal Rules of Civil Procedure is to give the opposing party 'fair notice of the nature and basis or grounds for a claim, and a general indication of the type of litigation involved.'" *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014) (quoting *Hopkins v. Saunders*, 199 F.3d 968, 973 (8th Cir. 1999)).  However, "[a] pro se complaint must be liberally construed, and pro se litigants are held to a lesser pleading standard than other parties." *Topchian*, 760 F.3d at 849 (internal quotation marks and citations omitted).

Liberally construed, Lightfeather alleges federal constitutional claims.  To state a claim under 42 U.S.C. § 1983, a plaintiff must allege a violation of rights protected by the United States Constitution or created by federal statute and also must show that the alleged deprivation was caused by conduct of a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988);  *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993).

**B. Requested Relief Unavailable in this § 1983 Action**

Lightfeather sues Defendants for violations of his Eighth Amendment rights and seeks the following relief: (1) release from NDCS custody, (2) damages of $500,000.00 from the NDCS and the NDCS Defendants, and (3) injunctive relief in the form of specific dietary accommodations such as "packaged food items . . . for [Lightfeather] to open . . . before eating," a food tray delivered separately from others, meals consisting of a 3,000 calorie diet, and a photo log of all food provided to Lightfeather.  Filing No. 1 at 27–28.  However, for the reasons that follow, Lightfeather cannot obtain such relief in the present action under 42 U.S.C. § 1983.

### *1. Release*

Lightfeather explicitly asks to be released from his state-imposed sentence "based on safety threats at risk."  Filing No. 1 at 28.  "Release from confinement is not cognizable relief under § 1983."  *McAfee v. Missouri*, No. 4:23-CV-526 SRW, 2023 WL 4419739, at *4–5 (E.D. Mo. July 10, 2023).  The United States Supreme Court has explained that "a § 1983 action will not lie when a state prisoner challenges 'the fact or duration of his confinement,' and seeks either 'immediate release from prison,' or the 'shortening' of his term of confinement."  *Wilkinson v. Dotson*, 544 U.S. 74, 79 (2005)

15

(internal citations omitted) (quoting *Preiser v. Rodriguez*, 411 U.S. 475, 482, 489 (1973)).  Thus, the Court cannot grant Lightfeather's request to be released from NDCS custody, and Lightfeather must seek such relief in a habeas corpus action.  *See Adams v. Agniel*, 405 F.3d 643, 644–45 (8th Cir. 2005) (explaining that a habeas action is the proper vehicle for a prisoner to challenge the legality of his sentence or seek immediate or speedier release).

### 2. *Injunctive Relief*

All of the injunctive relief Lightfeather requests relates solely to his claims regarding contaminated and poisoned food trays.  As the Court explained above, though, Lightfeather cannot proceed on those claims under the imminent danger exception to the three strikes rule as his allegations of past imminent danger from contaminated and poisoned food trays do not qualify for the exception and he alleges no threat of continuing or future injury.  Because his claims for injunctive relief are unrelated to his imminent danger claims on which this action may proceed, i.e. his claim related to Pavey's "hit" on Lightfeather, the Court will dismiss his claims for injunctive relief.  See *Charron*, 2018 WL 3546763, at *1 ("When an inmate is granted leave to proceed in forma pauperis under the imminent danger exception, the in forma pauperis 'action must be limited to imminent danger claims that have been properly exhausted.'" (quoting *McAlphin*, 375 F.3d at 755)).

### 3. *Damages*

Lightfeather seeks an award of damages from the NDCS and the NDCS Defendants.  Filing No. 1 at 27.  However, Lightfeather did not specify the capacity in which any of the Defendants are sued.  Where a plaintiff fails to "expressly and

unambiguously" state that a public official is sued in his individual capacity, the Court "assume[s] that the defendant is sued only in his or her official capacity." *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999). The Eleventh Amendment bars claims for damages by private parties against a state, state instrumentalities, and an employee of a state sued in the employee's official capacity. *See, e.g.*, *Egerdahl v. Hibbing Cmty. Coll.*, 72 F.3d 615, 619 (8th Cir. 1995); *Dover Elevator Co. v. Arkansas State Univ.*, 64 F.3d 442, 446–47 (8th Cir. 1995). Any award of retroactive monetary relief payable by the state, including for back pay or damages, is proscribed by the Eleventh Amendment absent a waiver of immunity by the state or an override of immunity by Congress. *See, e.g.*, *id.*; *Nevels v. Hanlon*, 656 F.2d 372, 377–78 (8th Cir. 1981). Thus, the Eleventh Amendment bars Lightfeather's claims for damages against NDCS and the NDCS Defendants in their official capacities, and such claims must be dismissed.

Even if Lightfeather had sued all Defendants in their individual capacities, his pleadings fail to state a claim for relief against any of the named Defendants as explained below.

## C. Complaint Fails to State Claim for Relief Against Any Defendant

Liberally construed, Lightfeather alleges an Eighth Amendment failure-to-protect claim based on Pavey's "hit" placed on Lightfeather. "[P]rison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). However, prison officials do not incur constitutional liability for every injury suffered by a prisoner. *Id.* at 834. In order to prevail on an Eighth Amendment failure-to-protect claim, an inmate must make two showings. First, the

inmate must demonstrate that he or she is "'incarcerated under conditions posing a substantial risk of serious harm.'" *Jensen v. Clarke*, 73 F.3d 808, 810 (8th Cir. 1996) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). The second requirement concerns the state of mind of the prison official who is being sued. *Id.* It mandates that the inmate show that the official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [the official] must also draw the inference." *Id.* (internal quotation omitted). This subjective requirement is necessary because "only the unnecessary and wanton infliction of pain implicates the Eighth Amendment." *Id.* (internal quotation omitted).

For the reasons below, Lightfeather has failed to state a plausible Eighth Amendment failure-to-protect claim against any of the Defendants.

### 1. NDCS

Lightfeather names NDCS as a defendant. States or governmental entities that are considered arms of the state are not suable "persons" within the meaning of 42 U.S.C. § 1983, *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 70 (1989), and suits against the state or its agencies are barred by the Eleventh Amendment. *Monroe v. Ark. State Univ.*, 495 F.3d 591, 594 (8th Cir. 2007) (Eleventh Amendment bars suit against state agency for any kind of relief); *Nix v. Norman*, 879 F.2d 429, 431-32 (8th Cir. 1989) (suit brought solely against state or state agency is proscribed by Eleventh Amendment); *see also Brown v. Arkansas Dep't of Human Servs.*, 452 F. App'x 690, 693 (8th Cir. 2011) (unpublished) (plaintiff's § 1983 claims against state agency barred

by Eleventh Amendment). Accordingly, the NDCS must be dismissed for failure to state a claim upon which relief can be granted.

### 2. Martin and Inspector General

Lightfeather names Martin and the Inspector General as Defendants in this matter, but he makes no allegations against either Defendant in the body of his Complaint. He does not allege that either of them are personally involved in the alleged constitutional violations or that either of them had any personal involvement whatsoever in any acts of which he complains. While Lightfeather includes a section in his Complaint titled "Defendant Dietary Kitchen Martin," Filing No. 1 at 18, he does not identify who Martin is or even allege any conduct by Martin. As a result, Lightfeather has failed to state a claim upon which relief can be granted against either of these Defendants. See Krych v. Hvass, 83 Fed.Appx. 854, 855 (8th Cir. 2003) (holding court properly dismissed claims against defendants where pro se complaint was silent as to the defendants except for their names appearing in the caption).

### 3. Inmate Defendants

Lightfeather names NDCS inmates Osuna, Mandoza, Vasquez, Pavey, Foster, D.J., Griffin, and Jay Bone as Defendants. As indicated above, to succeed on a § 1983 claim, a plaintiff must demonstrate that the defendant acted under color of state law. 42 U.S.C. § 1983; West, 487 U.S. 42, 49–50 (1988). Clearly, the inmate Defendants are not state actors acting under color of state law. However, a § 1983 claim may be brought against a private individual if he conspires with a state actor to deprive a person of his constitutional rights. DuBose v. Kelly, 187 F.3d 999, 1003 (8th Cir. 1999). To state a 42 U.S.C. § 1983 conspiracy claim, a plaintiff must allege "an agreement

between the parties to inflict a wrong against or injury upon another, and an overt act that results in damage. A plaintiff must allege with sufficient particularity and demonstrate with specific material facts that the parties reached some agreement and conspired together to deprive plaintiff of a federal right." *Gometz v. Culwell*, 850 F.2d 461, 464 (8th Cir. 1988) (internal citation and quotation marks omitted).

Here, Lightfeather has not alleged any facts suggesting inmates Foster and D.J. are conspiring with a state actor; rather, he states Foster and D.J. threatened to act against Lightfeather pursuant to Pavey's hit, which does not suggest any necessary state action. *See* Filing No. 12 at 3. Lightfeather's pleadings also do not contain any specific allegations showing a meeting of the minds between inmates Osuna, Mandoza, Vasquez, Griffin, or Jay Bone and any NDCS officer. Lightfeather's general and conclusory allegations that these inmates are working with officers to have him murdered are insufficient not only to show imminent danger, but also to state a plausible § 1983 conspiracy claim. Accordingly, Lightfeather's claims against these Defendants will be dismissed.

With respect to inmate Pavey, the Court has concluded that Lightfeather's allegations in his pleadings and responses to the show cause order are sufficient to demonstrate that he faced an imminent danger of serious injury at the time he filed his Complaint in order to proceed IFP under the three strikes exception in 28 U.S.C. § 1915(g). However, the Court finds that Lightfeather's Complaint, Filing No. 1, and supplements, Filing No. 8; Filing No. 9, fail to allege specific factual allegations of an agreement between Pavey and an NDCS officer to state a plausible conspiracy claim.

20

Lightfeather alleges in conclusory fashion, without any factual support, that Pavey "put out the money to order the hit" and "has a few officers helping him in the matter, such as Case Manager Martin, Corrections Officer Hoffman, and Corrections Officer Simons," none of whom are named as defendants in this case. Filing No. 1 at 4. Lightfeather also offers his belief, without any discernible factual basis, that Pavey is friends with an administrator which enables him to promote Lightfeather's death and that an officer or caseworker could violate the central monitoring in place to keep Lightfeather and Pavey separate. *Id*. at 14–15. And while the Court generously construed Lightfeather's Complaint and supplement as alleging Defendant Miller acted pursuant to Pavey's hit when allegedly providing a shank to another inmate in a cell next to Lightfeather's, *see Id*. at 17; Filing No. 9 at 3–4, Lightfeather has alleged no facts in support of such an agreement between Miller and Pavey. Rather, Lightfeather only vaguely alleges that "a designed plot was created by officers where Pavey was placed on a unit [at the NSP] to kill [Lightfeather]" and "another plot was created" when Lightfeather was sent back to the RTC in which "[a]n officer named Miller, Hoffman, Andrews, and Case Worker Lewis of the R.T.C. set up a staged attack on my life." Filing No. 9 at 3–4.

On its own motion, the Court will give Lightfeather leave to amend his Complaint to allege facts in support of a plausible § 1983 conspiracy claim between Pavey and Miller or another NDCS officer.

### 4. Baren

Lightfeather also sues Counsel Ombudsman Baren because she failed to take any action on his reports regarding Pavey's hit and the March 2023 shank incident

involving Miller and stopped returning Lightfeather's phone calls after March 2023. Filing No. 1 at 8; *see also* Filing No. 9 at 4.

The Ombudsman's office (or Public Counsel) is an office of the legislative branch of state government. *Robinson v. Nebraska*, No. 8:22CV398, 2023 WL 3511371, at *3 n.4 (D. Neb. May 17, 2023) (citing *Smith v. Iverson*, No. 8:19CV298, 2019 WL 4417548, at *13 (D. Neb. Sept. 16, 2019); *State ex rel. Shepherd v. Nebraska Equal Opportunity Comm'n*, 557 N.W.2d 684, 691 (Neb. 1997)). "The powers of the Public Counsel, properly exercised, are purely investigatory and advisory." *Smith*, 2019 WL 4417548, at *13 (citing Neb. Att'y Gen. Opinion No. 102, 1981 WL 129122, at *2 (May 14, 1981); Neb. Rev. Stat. §§ 81-8,241 *et seq.*). As "Counsel Ombudsman," Baren is clearly not a prison official with any duty to protect Lightfeather from harm by other inmates.

Liberally construed, Lightfeather may be alleging that he was denied due process by Baren due to her failure to properly investigate his complaints about the threats to his safety. "The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Thus, Lightfeather must demonstrate that he has been deprived of a liberty interest in order to successfully claim that his Fourteenth Amendment right to due process has been violated. *See Persechini v. Callaway*, 651 F.3d 802, 806 (8th Cir. 2011) (citing *Sandin v. Conner*, 515 U.S. 472 (1995)). A liberty interest can arise out of the Due Process Clause itself or be state-created. *Id*. (citing *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989)).

Lightfeather "does not have a protected liberty interest in having his complaint investigated by the Ombudsman." *Smith*, 2019 WL 4417548, at *13 (citing *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993) (holding that inmates have no liberty interest in the processing of their grievances, such as would support § 1983 claim for prison officials' failure to pick up inmate's completed grievance forms or investigate inmate's grievances); *McGrone v. Boyd*, No. 8:18CV233, 2019 WL 2583841, at *3 (D. Neb. June 24, 2019) (holding inmate did not have viable due process claim against warden for ignoring his grievances)). Accordingly, Lightfeather's claims against Baren will be dismissed.

### 5.  C.M. Blue, Andrews, Holister, and Unknown White Female Officer

Upon review, the Court also finds that Lightfeather's claims against Defendants C.M. Blue, Andrews, Holister, and the "unknown white female officer" at TSCI must be dismissed as none of these defendants are alleged to have any personal involvement in the threats to Lightfeather's safety arising out of Pavey's hit. "[Section] 1983 liability is personal." *Doran v. Eckold*, 409 F.3d 958, 965 (8th Cir. 2005) (en banc). "To prevail on a § 1983 claim, a plaintiff must show each individual defendant's personal involvement in the alleged violation." *White v. Jackson*, 865 F.3d 1064, 1081 (8th Cir. 2017).

Here, the actions of Holister and the "unknown white female officer" at TSCI have nothing to do with Pavey's hit or the March 2023 shank incident at the RTC. Likewise, Lightfeather's allegations regarding C.M. Blue and Andrews relate only to the past incidents of alleged poisoning of Lightfeather, and nothing that these Defendants are alleged to have done or failed to do threatened Lightfeather with imminent danger of serious physical injury at the time his Complaint was filed. Thus, Lightfeather cannot

23

proceed in forma pauperis on any claim against these four Defendants under the three-strikes exception in 28 U.S.C. § 1915(g), and his claims against these Defendants will be dismissed.

### 6. Krugle

Liberally construed, Lightfeather sues Krugle for failing to transfer him to the OCC for his safety and failing to "fil[e] criminal charges on his officers in the RTC for attempted murder of the 2nd degree," which the Court assumes refers to the March 2023 shank incident.[9]   Filing No. 1 at 12.   However, Lightfeather alleges no facts to suggest that Krugle was deliberately indifferent to his safety with respect to Pavey's hit or the March 2023 shank incident.

Lightfeather alleges Krugle investigated the January 2023 poisoning by Osuna, Mandoza, and Vasquez but does not allege that Krugle had any involvement in investigating the March 2023 shank incident or even that Lightfeather reported the incident to Krugle.  To the extent it may be inferred Krugle was aware of Lightfeather's reports concerning Pavey and Miller to the NDCS Intelligence Department based on his membership in that department, no facts are alleged to show that Krugle or any other Intelligence Department member failed to take appropriate action.  Rather, Lightfeather specifically states that "a central monitoring is in place" to keep Lightfeather and Pavey separate and Pavey was placed on his "classification central monitoring no contact list" after two separate interviews with NDCS Intelligence in July and August 2023.   Id. at 14–15; Filing No. 11 at 1.   Lightfeather also does not allege that he has been placed near Pavey since early 2023 when they were cellmates.    Thus, the Court finds

---

[9] Though, it likely may refer to the January 2023 poisoning by Osuna, Mandoza, and Vasquez.  See Filing No. 1 at 12.

Lightfeather's allegations are insufficient to state a plausible failure-to-protect claim against Krugle and his claims against Krugle will be dismissed.

### 7. *Miller*

Finally, Lightfeather alleges Miller provided a shank to another inmate in a cell adjacent to Lightfeather's in March 2023 in order for the inmate to harm him.  Taken as true, Lightfeather's allegations are sufficient to state an Eighth Amendment failure-to-protect claim against Miller.  "Anyone who encourages other inmates to harm a prisoner without some penological purpose causes risk to the prisoner's safety and does so knowingly." *McClain v. Carney*, No. 2:23-CV-4012-JDW, 2024 WL 113761, at *10 (E.D. Pa. Jan. 10, 2024) (prisoner's allegations that corrections officers "put the $100 bag of commissary hit contract 'on [his] head'" stated deliberate indifference claim). Lightfeather will be given leave to amend his Complaint to allege his Eighth Amendment claim against Miller in his individual capacity.

## IV.  REQUEST FOR APPOINTMENT OF COUNSEL

In his Complaint, Lightfeather included a request for appointed counsel.  Filing No. 1 at 26.  "There is no constitutional or statutory right to appointed counsel in civil cases." *Phillips v. Jasper Cnty. Jail*, 437 F.3d 791, 794 (8th Cir. 2006).  A district court "may request an attorney to represent" an indigent civil litigant, 28 U.S.C. § 1915(e)(1), but it has a "good deal of discretion" in deciding whether to do so, *Chambers v. Pennycook*, 641 F.3d 898, 909 (8th Cir. 2011).  "Relevant criteria for determining whether counsel should be requested include the factual and legal complexity of the case, the plaintiff's ability to investigate the facts and to present the claims, and the

presence or absence of conflicting testimony." *Recca v. Omaha Police Dep't*, 859 F. App'x 3, 4 (8th Cir. 2021) (citing *Davis v. Scott*, 94 F.3d 444, 447 (8th Cir. 1996)).

The Court has carefully reviewed the record and finds there is no need for the appointment of counsel at this time as, at this early stage of litigation, Lightfeather appears able to adequately present his claims. The Court is, however, aware that this situation may change as litigation progresses. As the Eighth Circuit Court of Appeals instructs, the Court will "continue to be alert to the possibility that, because of procedural complexities or other reasons, later developments in the case may show either that counsel should be appointed, or that strict procedural requirements should, in fairness, be relaxed to some degree." *Williams v. Carter*, 10 F.3d 563, 567 (8th Cir. 1993).

## V. CONCLUSION

Lightfeather is granted leave to proceed IFP under the imminent danger exception to 28 U.S.C. § 1915(g) for his claims related to the threats to his life and safety arising from Pavey's hit. However, Lightfeather's Complaint fails to state a plausible claim for relief against any Defendant. On the Court's own motion, Lightfeather will be given 30 days to file an amended complaint that states a plausible claim for relief against Pavey and Miller as set forth above. All other claims will be dismissed without prejudice and without leave to amend for the reasons stated above.

If Lightfeather chooses to amend his Complaint, he is advised that **the Court will no longer permit the piecemeal filing of supplemental materials in this case**. Lightfeather's repeated filing of supplementary materials frustrates the Court's ability to discern and review the claims Lightfeather seeks to raise in this matter. It is true that complaints filed by pro se litigants are held to less stringent standards than those

applied to formal pleadings drafted by lawyers; however, even pro se litigants must comply with the Federal Rules of Civil Procedure. Federal Rule of Civil Procedure 8 requires that every complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief" and that "[e]ach allegation . . . be simple, concise, and direct." Fed. R. Civ. P. 8(a)(2), (d)(1). A complaint must state enough to "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Twombly*, 550 U.S. at 555).

Accordingly, if Lightfeather decides to file an amended complaint, he must include all of the claims he wishes to pursue against all of the defendants he wishes to proceed against *in one document*. The amended complaint must specify in what capacity the defendants are sued and must set forth all of Lightfeather's claims (and any supporting factual allegations) against that defendant. To be clear, Lightfeather's amended complaint must restate the relevant allegations of his Complaint, Filing No. 1; Filing No. 8; Filing No. 9, the relevant allegations regarding imminent danger of serious injury in his responses, Filing No. 11; Filing No. 12; Filing No. 13, and any new allegations. Lightfeather should be mindful to explain who each defendant is, what each defendant did to him, when the defendant did it, and how the defendant's actions harmed him. Lightfeather is warned that any amended complaint he files will supersede, not supplement, his prior pleadings. Lightfeather is encouraged to use the Court-approved form to draft his amended complaint, which the Clerk of the Court will provide to him.

If Lightfeather fails to file an amended complaint in accordance with this Memorandum and Order, this action will be dismissed without prejudice and without

further notice to Lightfeather.  The Court reserves the right to conduct further review of Lightfeather's claims pursuant to 28 U.S.C. §§ 1915(e) and 1915A after he addresses the matters set forth in this Memorandum and Order.

IT IS THEREFORE ORDERED that:

1.    Lightfeather's Motion for Leave to Proceed IFP, Filing No. 5, is granted. His subsequent motion for leave to proceed IFP, Filing No. 11, is denied as moot.

2.    The filing fee shall be collected and remitted, as funds exist, in the manner set forth in 28 U.S.C. § 1915(b)(2).  Until the full filing fee of $350.00 is paid, Lightfeather shall be obligated to pay, and the agency having custody of Lightfeather shall forward to the Clerk of the Court, 20 percent of the preceding month's income in such months as the account exceeds $10.00.

3.    The Clerk of the Court shall serve a copy of this order on the appropriate financial officer for Plaintiff's current institution.

4.    The following Defendants and claims shall be dismissed or proceed further as specified below:

    a.    Lightfeather's claims for relief in the form of release and injunctive relief are dismissed without prejudice.

    b.    Lightfeather's claims for damages against NDCS and the NDCS Defendants in their official capacities are dismissed without prejudice as they are barred by sovereign immunity.

    c.    Lightfeather's claims against Defendants Nebraska Department of Correctional Services, Inspector General of Nebraska, Stephanie Baren, Dietary Kitchen Martin, Brandon Holister, Unknown White

28

Female Officer for NDCS, Foster, D.J., Case Manager Blue, Victor Osuna, Ricardo Mandoza, Lewis Vasquez, Captain Krugle, Corporal Andrews, Lank Griffin, and Blue a/k/a Jay Bone are dismissed without prejudice and without leave to amend.

d.    Lightfeather is granted leave to file an amended complaint to state plausible Eighth Amendment failure-to-protect and conspiracy claims against Defendants Pavey and Miller arising out of their conduct related to Pavey's hit and the March 2023 shank incident.

5.    Lightfeather shall have until **May 20, 2024**, to file an amended complaint in accordance with this Memorandum and Order.  Failure to file an amended complaint within the time specified by the Court will result in the Court dismissing this case without further notice to Lightfeather.  Lightfeather should be mindful to explain in his amended complaint who each defendant is, whether each defendant is sued in his or her individual capacity, official capacity, or both, what each defendant did to him, when the defendant did it, and how the defendant's actions harmed him.

6.    In the event that Lightfeather files an amended complaint, Lightfeather shall restate the relevant allegations of the Complaint, Filing No. 1, supplements, Filing No. 8; Filing No. 9, any relevant allegations regarding imminent danger of serious injury in his responses, Filing No. 11; Filing No. 12; Filing No. 13, and any new allegations. Failure to consolidate all claims into one document may result in the abandonment of claims.   Lightfeather is encouraged to use the form complaint enclosed with this Memorandum and Order.  **Lightfeather is warned that an amended complaint will supersede, not supplement, his prior pleadings**.

7.     The Clerk of Court is directed to send to Lightfeather a Form Pro Se 14 Complaint for Violation of Civil Rights (Prisoner Complaint).

8.     The Court reserves the right to conduct further review of Lightfeather's claims pursuant to 28 U.S.C. §§ 1915(e) and 1915A in the event he files an amended complaint.

9.     The Clerk of Court is directed to set a pro se case management deadline using the following text: **May 20, 2024**: check for amended complaint.

10.     The Clerk of Court is directed to remove Defendants Nebraska Department of Correctional Services, Stephanie Baren, Brandon Holister, Unknown White Female Officer for NDCS, Foster, D.J., Case Manager Blue, Victor Osuna, Ricardo Mandoza, Lewis Vasquez, Captain Krugle, Corporal Andrews, Dietary Kitchen Martin, Lank Griffin, and Blue a/k/a Jay Bone from this action.

Dated this 18th day of April, 2024.

BY THE COURT:

Joseph F. Bataillon
Senior United States District Judge